# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 17-CV-1067 (JFB) (AYS)

THOMAS CULLINAN, ET AL.,

Plaintiffs,

VERSUS

CEMTREX, INC., ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
March 9, 2018

JOSEPH F. BIANCO, District Judge:

Presently before the Court are two competing motions requesting that the Court (1) consolidate three related securities class actions,[1] (2) appoint movant as lead plaintiff, and (3) approve movant's selection of lead counsel, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u–4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The pending motions were filed in *Cullinan*, the first-filed action, one by Umang Khetarpal, Benjamin Webb, Gang Chen, Timothy Heath, and Minh Nguyen (collectively, the "Cemtrex Investor Group")[2] (ECF No. 20),[3] and the other by Zarrin Nelson ("Nelson," and together with the Cemtrex Investor Group, "movants") (ECF No. 23). The Cemtrex Investor Group and Nelson filed their motions on behalf of a putative class of purchasers of Cemtrex, Inc.

---

[1] The three securities class actions are *Cullinan v. Cemtrex, Inc.*, 17-cv-1067 (JFB)(AYS), *Monteil v. Cemtrex, Inc.*, 17-cv-1070 (ADS)(AYS), and *Guerrier v. Cemtrex, Inc.*, 17-cv-1071 (SJF)(AYS).

[2] The Cemtrex Investor Group listed Mark Parella, rather than Minh Nguyen, as one of the movants in the group in in its first memorandum (ECF No. 21), but Minh Nguyen's name appears on the Cemtrex Investor Group's subsequent submissions.

[3] All citations to the record in this case will be to the *Cullinan* docket, unless otherwise indicated. References to the *Cullinan* docket will be cited as "ECF No. [docket number]." References to the *Monteil* docket will be cited as "*Monteil*, ECF No. [docket number]." References to the *Guerrier* docket will be cited as "*Guerrier*, ECF No. [docket number]."

("Cemtrex" or the "Company") securities[4] during the period of defendants' alleged Exchange Act violations.[5] Defendants include Cemtrex, as well as Cemtrex's Chief Executive Officer, Saagar Govil, Executive Director, Aron Govil, and Vice President of Finance and Principal Financial Officer, Renato Dela Rama.

First, because the Court finds that the three class actions present common questions of law and fact, and consolidation would serve the interests of judicial economy, the Court grants the motions to consolidate. Second, based on its determination that the Cemtrex Investor Group has the largest financial interest, and that the presumption under the PSLRA that the Cemtrex Investor Group is "the most adequate plaintiff" to represent the class has not been rebutted, the Court appoints the Cemtrex Investor Group as lead plaintiff. Finally, the Court approves the Cemtrex Investor Group's selection of Levi & Korsinsky, LLP, as lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v).

I. BACKGROUND

A. The Securities Class Actions

According to the complaints, Cemtrex is a technology company, or a self-described "world leading industrial and manufacturing company" that provides electronic manufacturing services for "advanced electric system assemblies, instruments & emission monitors for industrial processes, and industrial air filtration and environmental control systems." (ECF No. 1 ("*Cullinan* Compl.") ¶¶ 2, 19-20; *Monteil*, ECF No. 1 ("*Monteil* Compl.") ¶ 2; *Guerrier*, ECF No. 1 ("*Guerrier* Compl.") ¶¶ 7, 16.) Plaintiffs brought the instant actions on February 24, 2017, following the February 22, 2017 publication of a blog post entitled "Cemtrex: Documents And Photos, All Signs Point To Deception And Failure," on *SeekingAlpha.com* ("*Seeking Alpha*"), a popular investing website. (*Cullinan* Compl. ¶ 29; *Monteil* Compl. ¶ 28; *Guerrier* Compl. ¶ 20.) The *Seeking Alpha* post claimed that Cemtrex was involved in conduct that the U.S. Securities and Exchange Commission (the "SEC") had previously found, with regard to other companies, to be fraudulent. (*Id.*) The post discussed problematic conduct and omissions including payments by "Cemtrex insiders" that were not disclosed to investors, and which had resulted in securities fraud suits in similar cases; the apparent failure to disclose insiders' sales of shares; and fraudulent conduct by Cemtrex's auditor. (*Cullinan* Compl. ¶ 29.) Plaintiffs allege that, "on this news" (or "in reaction to the shocking disclosures" in the *Seeking Alpha* post), the price of Cemtrex common stock fell $1.72 per share, or 33.5%, "on unusually heavy trading volume" that same day.[6] (*Id.* ¶ 30; *Monteil* Compl. ¶ 31; *Guerrier* Compl. ¶ 21.)

Plaintiffs filed their complaints in the three related actions on February 24, 2017, claiming in each that defendants violated the Exchange Act through their materially false and/or misleading statements and failure to disclose material adverse facts about

---

[4] Cemtrex's common stock is listed on the NASDAQ Stock Market ("NASDAQ") as "CETX."

[5] As discussed *infra*, plaintiffs in the three actions propose different class periods spanning from 2016 through 2017.

[6] Cullinan also alleges that the post "brought greater publicity to the fact" that, on February 17, 2017, the Financial Industry Regulatory Authority ("FINRA")

and SEC had terminated Cemtrex's former dealer-manager's registrations "following multiple violations." (*Cullinan* Compl. ¶¶ 3, 5.) Plaintiffs allege that, "on this news" (referring to the news of the FINRA and SEC registration terminations), on February 21, 2017, the price of Cemtrex common stock fell $0.65 per share, or 11.2%, "on unusually heavy trading volume." (*Id.* ¶¶ 4, 27-28.)

Cemtrex's "business, operations, and prospects" during the class period, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. (*Cullinan* Compl. ¶¶ 26, 49-59; *Monteil* Compl. ¶¶ 23, 53-63; *Guerrier* Compl. ¶¶ 19, 32-41.) Plaintiffs name the same defendants in all three actions. (*Cullinan* Compl. ¶¶ 14-17; *Monteil* Compl. ¶¶ 15-18; *Guerrier* Compl. ¶¶ 7-10.) In addition to their Exchange Act claim against all defendants, plaintiffs in the three actions bring a separate claim against the individual defendants, whom they allege acted as controlling persons and are liable for violating Section 20(a) of the Exchange Act. (*Cullinan* Compl. ¶¶ 60-63; *Monteil* Compl. ¶¶ 64-67; *Guerrier* Compl. ¶¶ 42-47.) Plaintiffs in the three actions bring their claims on behalf of a putative class of investors (the "class") who had acquired Cemtrex securities during the class period and suffered damages as "a direct and proximate result of Defendants' wrongful conduct." (*Cullinan* Compl. ¶¶ 31, 56, 59; *Monteil* Compl. ¶¶ 32, 60, 63; *Guerrier* Compl. ¶¶ 23, 38, 40.)

Plaintiffs' factual allegations are largely similar. All three complaints describe the same alleged "scheme" to "deceive the investing public," through which defendants caused the class to purchase Cemtrex's common stock at artificially inflated prices. (*Cullinan* Compl. ¶ 50; *Monteil* Compl. ¶ 54; *Guerrier* Compl. ¶¶ 35, 38.) Among other overlapping allegations, the complaints all point to the same alleged failure to disclose:

> (1) that Source Capital was at risk of having its registrations terminated for wrongdoing; (2) that the Company was utilizing paid stock promoters to artificially inflate the price of the Company's stock; (3) that Aron Govil, a member of the Company's Board of Directors, was secretly paying stock promoters via an undisclosed entity; (4) that Company insiders were selling their stock during the paid promotion, taking advantage of the artificially inflated stock price; (5) that the Company's purported audit firm claimed to operate at a location that was actually vacant; (6) that the controlling partner behind the Company's auditor was banned by the SEC and [the Public Company Accounting Oversight Board ("PCAOB")] for conducting fraudulent audits or reviews of public companies while performing little or no work and without being licensed; (7) that the Company's auditor was signing off on the Company's financial disclosures without conducting a proper review; and (8) that, as a result of the foregoing, Defendants' statements about Cemtrex's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

(*Cullinan* Compl. ¶ 7; *Monteil* Compl. ¶ 3, 30; *Guerrier* Compl. ¶¶ 19, 20.)[7]

Though largely similar, the three complaints vary in certain respects. Most significantly, the complaints all use different class periods: *Cullinan* defines the class period as February 11, 2016 through February 22, 2017 (*Cullinan* Compl. ¶ 1),

---

[7] The three complaints contain similar, if not identical, allegations. Rather than rephrase the *Seeking Alpha* blog post allegations, the *Guerrier* complaint includes excerpts from the post and explains: "Plaintiff's counsel independently corroborated the *Seeking Alpha* article by obtaining Southern Steel & Construction Inc.'s entity information from the New York State Department of State, Division of Corporations, Corporation and Business Entity Database." (*Guerrier* Compl. ¶ 20 n.1.)

*Monteil* defines the class period as December 7, 2016 through February 21, 2017 (*Monteil* Compl. ¶ 1), and *Guerrier* defines the class period as October 26, 2016 through February 22, 2017 (*Guerrier* Compl. ¶ 1).[8]

B. Motions for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel

On April 3, 2017, defendants filed a letter informing the Court of their intention to move to consolidate these three related actions. (ECF No. 11.) Defendants have not since moved for consolidation, but various plaintiff groups have filed or acquiesced to such a motion. Guerrier's counsel, for instance, submitted a letter in response to defendants' letter, stating that counsel was "puzzled by Defendants' request as consolidation is routinely sought in cases like this," and, "[h]ad Defendants reached out to the undersigned we (and likely the plaintiffs in the other related cases) would have consented to consolidation." (ECF No. 12 at 1.)

On April 25, 2017, four separate plaintiffs or plaintiff groups filed motions (1) to consolidate the related actions, (2) for appointment as lead plaintiff, and (3) for approval of their selection of lead counsel. The following plaintiffs subsequently submitted letters withdrawing their motions, and expressing their support for another potential lead plaintiff: (1) Ajith Chennadi, Wei Cao, Mark Mitchell, Thanh Monat, and Ben Webb[9] ("Cemtrex Investor Group 2") withdrew their motion for appointment as lead plaintiff on May 8, 2017 (ECF Nos. 15, 25), and (2) Lewis Monteil withdrew his motion on May 3, 2017 (ECF Nos. 17, 24). The Court granted the motions to withdraw on October 24, 2017. The Cemtrex Investor Group and Nelson filed the two motions

---

[8] The *Cullinan* class period begins on the day Cemtrex issued a press release announcing its First Quarter results (*Cullinan* Compl. ¶ 20), and runs through the day of the blog post publication, on which the stock price fell $1.72 per share, or 33.5% (*id.* ¶¶ 29-30). The *Monteil* class period begins with Cemtrex's amendment to its Form S-1 registration statement concerning the Rights Offering Source Capital conducted (*Monteil* Compl. ¶ 24), and runs through the day before the stock price allegedly dropped in response to the blog post disclosures (*id.* ¶ 6). The *Guerrier* class period begins on the day Cemtrex issued a press release announcing its preliminary Fiscal Year 2016 results (*Guerrier* Compl. ¶ 16), and—like the *Cullinan* class period—runs through the day of the blog post publication and alleged resultant stock price drop (*id.* ¶¶ 20-21).

[9] Benjamin Webb joined the Cemtrex Investor Group that filed the motion currently before the Court, as well as Cemtrex Investor Group 2. The Cemtrex Investor Group explained that:

> As set forth in the accompanying Declaration of Benjamin Webb in Support of the Cemtrex Investor Group's Lead Plaintiff Motion ("Webb Decl."), Mr. Webb retained Goldberg Law PC ("Goldberg") on or about April 6, 2017 under the mistaken belief that he was joining a different lawsuit than the one at issue in this motion in order to increase his chances of recouping his losses. Mr. Webb was unaware that he had been referred by the Goldberg firm to The Rosen Law Firm. Having never directly spoken to anyone at the Rosen firm, Mr. Webb was also unaware that the Rosen firm was seeking his appointment for lead plaintiff as part of the Cemtrex Investor Group 2. Upon learning that the two lawsuits were the same, Mr. Webb promptly sought to withdraw as a client of the Goldberg firm and, thus, from the Cemtrex Investor Group 2. On May 8, 2017, the Rosen firm withdrew the Cemtrex Investor Group 2's motion for appointment as lead plaintiff and represented in the withdrawal that its members did "not oppose the competing lead plaintiff Motion of Nelson" (the "Withdrawal"). Again, Mr. Webb was unaware that the Withdrawal was being filed, did not consent to its filing and, contrary to the representations in the Withdrawal, **does** oppose the Nelson motion . . . .

(ECF No. 27 ("Cemtrex Investor Group Opp.") at 6-7 n.5 (internal citations omitted).)

4

presently pending before the Court. On withdrawal, Cemtrex Investor Group 2 indicated that it "does not oppose [Nelson's] competing lead plaintiff motion." (ECF No. 25 at 3.) Monteil, in withdrawing, expressed his support for the Cemtrex Investor Group's motion. (ECF No. 24 at 2.)

On May 9, 2017, Nelson and the Cemtrex Investor Group filed their oppositions. (ECF No. 26 ("Nelson Opp."); ECF No. 27 ("Cemtrex Investor Group Opp.").) Both movants submitted replies on May 16, 2017. (ECF No. 28 ("Cemtrex Investor Group Reply"); ECF No. 30 ("Nelson Reply").) On July 17, 2017, Nelson submitted a notice of supplemental authority, bringing to the Court's attention the decision in *Galmi v. Teva Pharmaceuticals Industries Ltd.*, No. 3:17-cv-558 (SRU), 2017 WL 7261318 (D. Conn. July 11, 2017). (ECF No. 32 ("Nelson Supp. Auth.").) On December 20, 2017, the Cemtrex Investor Group submitted a notice of supplemental authority, bringing to the Court's attention the decision in *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846-WFK-PK, 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017). (ECF No. 36.) Nelson responded to the Cemtrex Investor Group's notice of supplemental authority on December 21, 2017. (ECF No. 37.)

The Court has fully considered the submissions of the parties.

II. DISCUSSION

A. Motion to Consolidate Related Cases

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions; or . . . issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). The district court has broad discretion to determine whether consolidation is appropriate. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990). Although "considerations of judicial economy favor consolidation," on the other hand, "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Id.* at 1285. In determining whether consolidation is appropriate, the court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (alterations in original) (citation omitted). The Court has considered each of these factors and finds that, in light of the highly similar allegations and claims in the three class actions against Cemtrex, consolidation is appropriate in order to serve the interests of judicial economy. *See, e.g.*, *Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation would further the goal of 'judicial economy' because discovery in each case is likely to be identical, [and] motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). In cases involving common questions of law or fact, courts favor consolidation "to avoid unnecessary costs or delay," *Johnson*, 899 F.2d at 1284, and to "expedite trial and eliminate unnecessary repetition and confusion," *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (citation omitted).

Here, defendants submitted a letter requesting permission to file a motion to consolidate these actions (*see* ECF No. 11 at

5

1), and plaintiffs in two of the three actions have expressed support for consolidation (*see* ECF No. 12 (Guerrier's response to defendants' letter) at 1; ECF No. 18 (Monteil's memorandum in support of his now-withdrawn motion) at 11-12).[10] The Court finds that, as defendants thoroughly articulate in their letter, the three actions "have nearly complete overlap of factual and legal issues." (ECF No. 11 at 2.) As discussed *supra*, these similarities include, among others, that the complaints: (1) were prompted by the publication of and alleged market response to the *Seeking Alpha* blog post, (2) challenge Cemtrex's auditor's qualifications and criticize Cemtrex for underpaying its auditor, (3) claim that Cemtrex paid stock promoters to artificially inflate the price of Cemtrex's stock, and (4) claim that Cemtrex insiders were selling their shares, undisclosed, during the paid promotion to take advantage of the artificially inflated share price. More generally, plaintiffs in these three actions all sued the same four defendants, on behalf of essentially the same putative class,[11] alleging the same Exchange Act violations, based on "largely the same" material misrepresentations and omissions. (*Id.* at 3.)

For these reasons, the Court agrees with the parties' determination that the cases present common questions of law and fact, and finds that consolidation would serve the interests of judicial economy. In light of the Court's independent determination that consolidation is appropriate, as well as the parties' support for consolidation, the Court grants the motions to consolidate.

B. Motion to Appoint Lead Plaintiff

1. Applicable Law

The PSLRA sets forth the following standard for selecting a lead plaintiff in a federal securities class action: "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes that courts shall adopt a presumption that the "most adequate plaintiff" is the class member or group that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii). This presumption can be rebutted "only upon proof" by a class member that the movant for appointment as lead plaintiff: (1) "will not fairly and adequately protect the interests of the class";

---

[10] Thomas Cullinan, one of the plaintiffs in the instant action, is the only plaintiff who has not submitted a letter or motion to the Court concerning consolidation; however, Cullinan has also not filed anything in this case after filing his complaint and summons.

[11] Although the different class periods alleged in the three complaints could impact which putative class members would, in fact, qualify, none of the parties raises this issue or opposes consolidation on this basis. Regardless, the Court notes that the different class periods would not, on their own, preclude consolidation. *Kux–Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016), *reconsideration denied sub nom. In re VimpelCom, Ltd.*, No. 1-15-CV-8672 (ALC), 2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016) ("[D]ifferences in . . . the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." (citation omitted)).

or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.*

Additionally, the PSLRA provides that (1) the plaintiff(s) who filed the complaint shall publish a notice advising members of the purported class of the pendency of the action "[n]ot later than 20 days after the date on which the complaint is filed," and (2) "not later than 60 days after the date on which the notice is published, any member of the purported class" may move to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(A)(i). In cases where multiple actions were filed, only the plaintiff or plaintiffs in the first-filed action are required to publish a notice. *Id.* § 78u-4(a)(3)(A)(ii).

2. Analysis

As a threshold matter, the notice of pendency and motions for appointment as lead plaintiff were timely filed in the instant action. Cullinan, as the plaintiff in the first-filed action, was the only plaintiff required to publish a notice, and he satisfied the requirement to publish within 20 days of filing the complaint. (ECF Nos. 1, 22-1.) Then, as required, the Cemtrex Investor Group and Nelson both moved for appointment as lead plaintiff within 60 days of the date counsel for Cullinan published the notice. (ECF Nos. 20, 23.)

    a. Aggregating Plaintiffs for Selection as Lead Plaintiff

The Cemtrex Investor Group and Nelson both satisfied the first requirement for a lead plaintiff by timely moving for appointment. Thus, the Court must next determine which of the two has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Before turning to the method of assessing financial interest, the Court addresses the issue of whether the Cemtrex Investor Group should be permitted to aggregate individual members' financial losses for purposes of appointment as lead plaintiff—the main issue that Nelson disputes. The Court finds that the Cemtrex Investor Group's proposed aggregation is appropriate.

Nelson argues that the Cemtrex Investor Group "is an assortment of unrelated plaintiffs cobbled together as a group by the law firm" and "is not cohesive," and that the Court, therefore, should not permit the proposed aggregation. (Nelson Opp. at 2; *see also* Nelson Supp. Auth. ("[C]ourts will not permit aggregation of [a proposed lead plaintiff group's] financial interests if it is apparent that the group 'has been assembled as a makeshift by attorneys for the purpose of [obtaining lead plaintiff status].'" (quoting *Teva*, 2017 WL 7261318, at *4)).) Nelson points to case law requiring that a plaintiff group demonstrate that "such a grouping would best serve the class," and in which courts have considered the following factors: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not *vice versa*." (Nelson Opp. at 2 (quoting *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015)).)

Although the PSLRA clearly allows a group of class members to join together for selection as lead plaintiff, Nelson correctly notes that courts have been resistant to appointing lead plaintiff groups that appear to lack a pre-litigation relationship and plans for coordination, or to be lawyer-driven, among other factors weighing against aggregation. (Nelson Opp. at 4-7); *see also Varghese, v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 393 (S.D.N.Y. 2008). In *Peters v. Jinkosolar Holdings, Co.*, which Nelson cites for the proposition that courts

reject groups that were "'cobbled together' for the sake of litigation," No. 11-7133, 2012 WL 946875, at *6 (S.D.N.Y. Mar. 19, 2012), the court provides examples of the types of evidence groups can present to demonstrate cohesion:

> [E]vidence regarding why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff.

*Id.* at *7 (citation omitted).

This Court recognizes the risk of approving lead plaintiff groups without evidence of their cohesion and plans for involvement in the litigation, but finds that the Cemtrex Investor Group is not the type of lawyer-driven group that other courts have cautioned against approving. Based on the Court's review of the Cemtrex Investor Group's submissions, the Court finds that the Cemtrex Investor Group has sufficiently demonstrated its group members' plans for cooperation and involvement in the litigation. The Cemtrex Investor Group submitted a joint declaration along with their opposition to Nelson's competing motion, in which they stated the following:

> [T]he members of the Cemtrex Investor Group communicated, with counsel, about the benefits of working together jointly to prosecute the litigation in a collaborative and cohesive manner . . . as well as the procedures and mechanisms for communication and decision-making that will ensure that the putative Class will benefit from our supervision of counsel. . . .
>
> [W]e will exercise joint decision-making and work together to actively monitor the activities of counsel as set forth herein. . . .
>
> We have implemented communication procedures to enable us to confer via phone and/or email on short notice to ensure the Cemtrex Investor Group is able to make timely decisions. We have also directed counsel to advise us of all developments during the Actions, including the Lead Plaintiff motion proceedings. We will continue to direct counsel and actively oversee the prosecution of the Actions for the benefit of the putative Class by, among other things, reviewing pleadings and conferring amongst ourselves. We are also prepared to personally travel to court proceedings, depositions, and settlement mediations when our presence will benefit the putative Class.

(ECF No. 27-1 ("Cemtrex Investor Group Decl. in Supp. of Opp.") ¶¶ 9, 11, 12.) In these and other affirmations, the Cemtrex Investor Group members discuss past communications, plans for future collaboration—including specific procedures to ensure that they are able to "make timely decisions"—and their commitment to overseeing counsel's activities.

In arguing that the Court should reject the Cemtrex Investor Group's motion, Nelson urges that a proposed lead plaintiff group must present evidence that the members of the group "chose outside counsel, and not *vice versa*" (Nelson Opp. at 3 (quoting *Khunt*, 102 F. Supp. 3d at 533)), and that the Cemtrex Investor Group has failed to do so.

8

This purported requirement is, however, simply one of the factors some courts have considered in deciding these motions; it is not an actual requirement. In *Blue Apron*, for instance, the court not only did not include the aforementioned factors discussed in *Khunt* in its opinion, but the court also approved a group that was clearly lawyer-assembled: "none of the proposed lead plaintiffs claim to have any relationship with one another beyond their participation in this litigation, much less a meaningful one. Consequently, they appear to be equally qualified to serve as lead plaintiffs on the basis of their representations to the Court . . . ."[12] 2017 WL 6403513, at *4. Regardless of whether this Court considers this factor to be significant, the Court finds that the Cemtrex Investor Group members submitted sufficient evidence of their involvement in the formation of the group: "[i]n order to formalize our joint leadership of the Actions, the members of the Cemtrex Investor Group communicated, with counsel, about the benefits of working together jointly to prosecute the litigation." (Cemtrex Investor Group Decl. in Supp. of Opp. ¶ 9.)

Based on its review of the record, the Court finds that the Cemtrex Investor Group is far from the type of makeshift, lawyer-driven group Nelson describes. The Cemtrex Investor Group members have even attested to their willingness to personally travel to and participate in litigation proceedings. The Cemtrex Investor Group has more than adequately demonstrated that its members "will be able to function cohesively and to effectively manage the litigation apart from their lawyers." *Id.* (quoting *Varghese*, 589 F. Supp. 2d at 392). The Court, therefore, accepts Cemtrex Investor Group's proposed aggregation for purposes of appointing lead plaintiff.

b. Largest Financial Interest

Although the PSLRA does not provide guidance as to how to determine which movant has the largest financial interest, courts in the Second Circuit typically apply the "*Lax* factors," or "*Lax/Olsten* factors" in making this assessment. *See, e.g.*, *Varghese*, 589 F. Supp. 2d at 395 (citing *Lax v. First Merch. Acceptance Corp.*, Nos. 97 C 2715, *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)); *Blue Apron*, 2017 WL 6403513, at *3. Under *Lax/Olsten*, courts consider the following factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Olsten Corp.*, 3 F. Supp. 2d at 295 (citing *Lax*, 1997 WL 461036, at *5). The last factor, losses suffered during the class period, is considered to be the most important. *Blue Apron*, 2017 WL 6403513, at *3 (citing *Khunt*, 102 F. Supp. 3d at 530); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). This Court will also utilize this framework in the instant case.

Here, based on movants' submissions, it is clear that the Cemtrex Investor Group has the largest financial interest. The Cemtrex Investor Group alleges that it acquired more than 90,000 shares of Cemtrex securities during the class period, and suffered a loss of approximately $182,000 "as a result of the revelations of the fraud." (ECF No. 21 ("Cemtrex Investor Group Mem. of Law") at

---

[12] In stating that "none of the proposed lead plaintiffs claim to have any relationship with one another," the *Blue Apron* court was discussing intra-group, rather than inter-group relationships. In other words, the court was explaining that none of the members of either of the proposed lead plaintiff groups had relationships with other members of their own group outside of the litigation.

6-7; ECF No. 22-3 ("Summary Loss Chart of the Cemtrex Investor Group").) Nelson, by comparison, alleges that she suffered a loss of approximately $90,000 during the class period. (ECF No. 23-1 ("Nelson Mem. of Law"); ECF Nos. 23-4, 23-5 ("Nelson's Trades in CETX Securities").) Nelson did not put forward any arguments as to why the Court should assign greater weight to a *Lax* factor other than loss, and financial loss was the only figure she included in support of her motion for appointment as lead plaintiff. *See Blue Apron*, 2017 WL 6403513, at *3 (determining "largest financial interest" based on the parties' representations as to their approximate losses, which the court found to be "an appropriate proxy for the movants' overall financial interest" because the parties focused their arguments on those figures and did not argue that any other factor should weigh more heavily).

In her opposition, Nelson argues that, due to the timing of movant Khetarpal's sales of some of his Cemtrex shares, movant Khetarpal's individual loss during the class period was actually $70,392.86 rather than $98,282.66, as the Cemtrex Investor Group alleges. (Nelson Opp. at 7-9 (arguing that, based on *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 344-45 (2005), the Court should discount any alleged losses from shares sold prior to the corrective disclosure).) Even if the Court were to accept Nelson's argument, the Court would still find the Cemtrex Investor Group's loss to be significantly greater than Nelson's. Additionally, directing the Court to the other *Lax* factors, the Cemtrex Investor Group submitted a table comparing movants' relative financial interests, and demonstrating that its interest is greater than Nelson's under all four metrics. (Cemtrex Investor Group Opp. at 1-2.) The Court finds that, based on its assessment of the fourth and most important factor, as well as the four *Lax* factors together, the Cemtrex Investor Group has the largest financial interest.

### c. Rule 23 Requirements

In addition to meeting the first two requirements, the Court finds that the Cemtrex Investor Group has made a preliminary prima facie showing that it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and is, therefore, presumptively the most adequate plaintiff. Rule 23 establishes that a class action may proceed only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). At this stage, movants seeking appointment as lead plaintiff need only make a "preliminary, prima facie showing" that the typicality and adequacy requirements would be met. *Varghese*, 589 F. Supp. 2d at 397 (quoting *In re Fuwei Films*, 247 F.R.D. at 437); *Blue Apron*, 2017 WL 6403513, at *3.

The typicality requirement is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (citations omitted). Courts in this circuit have clarified, however, that a lead plaintiff's claims "need not be identical" to the claims of the class, and that "similarity of legal theory may control even in the face of differences of fact." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004) (citation omitted). The

10

Cemtrex Investor Group argues that the typicality requirements are satisfied because, like the proposed class, (1) the Cemtrex Investor Group claims that "defendants' material misstatements and omissions concerning Cemtrex's business, operations and financial prospects violated the federal securities laws," and (2) the Cemtrex Investor Group "purchased Cemtrex securities in reliance on defendants' alleged misstatements and omissions and was damaged thereby." (Cemtrex Investor Group Mem. of Law at 8.) The Court finds that the Cemtrex Investor Group has made the requisite prima facie showing that the lead plaintiff and class claims arise from the same course of events—the purchase of Cemtrex securities in reliance on defendants' alleged misstatements—and are based on similar legal arguments surrounding defendants' violation of the federal securities laws and the resulting harms.

In order for a lead plaintiff to satisfy the Rule 23 adequacy requirement, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *In re Fuwei Films*, 247 F.R.D. at 436 (citation omitted). The lead plaintiff should also "have a sufficient interest in the outcome to ensure vigorous advocacy." *Id.* The Cemtrex Investor Group argues that it satisfies both of the aforementioned adequacy requirements because (1) it "has demonstrated its adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action," and (2) it is unaware of any conflicts between its claims and those of the class. (Cemtrex Investor Group Mem. of Law at 8.) The Cemtrex Investor Group also asserts that the financial losses it suffered "ensure that it has sufficient incentive to ensure vigorous advocacy." (*Id.*)

The Court finds that the Cemtrex Investor Group has made a sufficient showing at this stage of its adequacy to represent the class.

### d. Most Adequate Plaintiff Presumption Has Not Been Rebutted

Nelson has not rebutted the presumption that the Cemtrex Investor Group is the most adequate plaintiff by demonstrating that the Cemtrex Investor Group would not "fairly and adequately protect the interests of the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii), as discussed *supra*. Nor has Nelson demonstrated that the Cemtrex Investor Group "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* Nelson focuses primarily on the alleged issues with aggregating the individual plaintiffs in the Cemtrex Investor Group (discussed *supra*), and fails to provide any persuasive argument that Cemtrex Investor Group is not the most adequate plaintiff.

### C. Motion to Appoint Lead Counsel

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u–4(a)(3)(B)(v). As the Court now grants the Cemtrex Investor Group's motion for appointment as lead plaintiff, it also considers the Cemtrex Investor Group's selection of lead counsel, Levi & Korsinsky, LLP. The PSLRA provides no further instruction regarding the approval of lead counsel. Courts have correctly found that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008), *aff'd sub nom. Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d

82 (2d Cir. 2010) (citation omitted). Here, the Cemtrex Investor Group states that Levi & Korsinsky, LLP "possesses adequate experience in securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors," and that the Court may, therefore, "be assured that by granting the Movant's motion, the Class will receive the highest caliber of legal representation." (Cemtrex Investor Group Mem. of Law at 9.) Based on the Cemtrex Investor Group's representations, the Court approves Levi & Korsinsky, LLP, as lead counsel.

### III. CONCLUSION

For the foregoing reasons, the Court grants the motions to consolidate *Cullinan*, *Monteil*, and *Guerrier*, appoints the Cemtrex Investor Group as lead plaintiff, and approves the Cemtrex Investor Group's selection of Levi & Korsinsky, LLP, as lead counsel.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: March 9, 2018
      Central Islip, New York

\*\*\*

Plaintiff Cullinan is represented by Lesley Frank Portnoy of Glancy Prongay & Murray LLP, 122 East 42nd Street, Suite 2920, New York, NY 10168. Plaintiff Monteil is represented by Steven Bennett Singer of Saxena White P.A., 4 West Red Oak Lane, Suite 312, White Plains, NY 10604. Plaintiff Guerrier is represented by Laurence Matthew Rosen and Phillip Kim of The Rosen Law Firm, P.A., 275 Madison Avenue, 34th Floor, New York, NY 10016.

The Cemtrex Investor Group is represented by Phillip Kim of The Rosen Law Firm, P.A., 275 Madison Avenue, 34th Floor, New York, NY 10016; Lawrence P. Eagel and Melissa Ann Fortunato of Bragar Eagel & Squire PC, 885 Third Avenue, Suite 3040, New York, NY 10022; and Shannon Lee Hopkins of Levi & Korsinsky LLP, 30 Broad Street, 24th Floor, New York, NY 10004.

Nelson is represented by Thomas J. McKenna of Gainey McKenna & Egleston, 440 Park Avenue South, 5th Floor, New York, NY 10016.

Defendants are represented by Douglas W. Greene of Baker & Hostetler LLP, 999 Third Avenue, Suite 3600, Seattle, WA 98104.