# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

THOMAS CULLINAN, Individually and
On Behalf of All Others Similarly Situated,

                        Plaintiffs,

             v.

CEMTREX, INC., SAAGAR GOVIL,
ARUN GOVIL and RENATO DELA
RAMA,

                        Defendants.

Consolidated Case No.: 2:17-cv-01067

Judge Joseph F. Bianco

---

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**LEVI & KORSINSKY LLP**
Shannon L. Hopkins (SH-1887)
Sebastiano Tornatore (ST-0807)
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171

*Counsel for the Cemtrex Investor Group and Lead
Counsel for the [Proposed] Class*

**BRAGER EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel (LE-4505)
Melissa A. Fortunato (MF-7182)
885 Third Avenue, Suite 3040
New York, New York 10022
Tel.: (212) 355-4648
Fax: (212) 214-0506

*Additional Counsel for the Cemtrex Investor
Group*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.   NATURE OF THE ACTION ........................................................................................... 2

   A.   Summary Of The Claims And Allegations ............................................................ 2

   B.   Procedural History ................................................................................................. 3

III.  THE SETTLEMENT ...................................................................................................... 4

IV.   ARGUMENT ................................................................................................................. 6

   A.   The Settlement Class Should Be Certified ............................................................ 6

     1.   Numerosity .................................................................................................... 7

     2.   Commonality ................................................................................................. 8

     3.   Typicality ...................................................................................................... 8

     4.   Adequacy ....................................................................................................... 9

     5.   Common Questions Predominate And A Class Action Is The Superior Method Of Adjudication ................................................................................................. 10

     6.   The Court Should Appoint Levi & Korsinsky As Class Counsel .................. 11

   B.   The Proposed Settlement Warrants Preliminary Approval ................................... 12

     1.   Lead Plaintiffs And Counsel Adequately Represented The Class ................. 13

     2.   The Proposed Settlement Was The Result Of Fair, Non-Collusive, Informed Arm's-Length Negotiations ........................................................................... 14

     3.   The Relief Provided For The Class Is Adequate ........................................... 15

       (a)   The Costs, Risks, And Delay of Trial And Appeal ............................... 15

       (b)   The Effectiveness Of The Proposed Method Of Distributing Relief To The Class 16

       (c)   The Terms Of The Proposed Award Of Attorney's Fees, Including Timing Of Payment .................................................................................................. 18

       (d)   Any Agreement Required To Be Identified Under Rule 23(e)(3) .......... 19

     4.   The Settlement Treats Class Members Equitably ......................................... 19

   C.   The Proposed Form Of Notice And Notice Schedule Should Be Approved .................... 20

     1.   The Proposed Form Of Notice ..................................................................... 20

     2.   The Proposed Schedule ................................................................................ 22

V.    CONCLUSION ............................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Adair v. Bristol Tech. Sys.*,
   No. 97-civ-5874 (RWS), 1999 U.S. Dist. LEXIS 17627 (S.D.N.Y. Nov. 12, 1999)............... 18

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................................... 10, 11

*Aramburu v. Healthcare Fin. Servs.*,
   No. 02-civ-6535 (MDG), 2009 U.S. Dist. LEXIS 33642 (E.D.N.Y. Apr. 22, 2009) ............. 16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) .......................................................................................................... 9

*Barone v. Safeway Steel Prods., Inc.*,
   No. 03-civ-4258 (FB), 2005 U.S. Dist. LEXIS 17645 (E.D.N.Y. Aug. 23, 2005) .................... 7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................................... 18

*Bourlas v. Davis Law Assocs.*,
   237 F.R.D. 345 (E.D.N.Y. 2006) ............................................................................................... 19

*Calibuso v. Bank of Am. Corp.*,
   299 F.R.D. 359 (E.D.N.Y. 2014) ................................................................................................. 6

*Cazares v. Ava Rest. Corp.*,
   No. 15-civ-0477 (KAM) (RML), 2017 U.S. Dist. LEXIS 50834 (E.D.N.Y. Mar. 31, 2017)... 12

*Cent. States Southeast & Southeast Areas Health & Welfare Fund v. Merck-Medco Managed
   Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ........................................................................................... 7, 9, 18

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) ........................................................................................ 19

*Coco v. Inc. Vill. Of Belle Terre*,
   233 F.R.D. 109 (E.D.N.Y. 2005) ............................................................................................ 9, 10

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) .......................................................................................................... 7

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......................................................................... 14

*Dial Corp. v. News Corp.*,
317 F.R.D. 426 (S.D.N.Y. 2016) .................................................................... 20

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ............................................................ 20

*Gay v. Tri-Wire Eng'g Solutions, Inc.*,
No. 12-civ-2231 (KAM)(JO), 2014 U.S. Dist. LEXIS 232 (E.D.N.Y. Jan. 2, 2014) .............. 15

*Gudimetla v. Ambow Educ. Holding*,
No. 12-civ-5062 (PSG) (AJWx), 2015 U.S. Dist. LEXIS 187106 (C.D. Cal. Mar. 16, 2015) . 18

*Hefler v. Wells Fargo & Co.*,
No. 16-civ-05479 (JST), 2018 U.S. Dist. LEXIS 150292 (N.D. Cal.) (Sept. 4, 2018) ............. 19

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987) .................................... 14

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) .......................................................................... 6, 7

*In re Ashanti Goldfields Sec. Litig.*,
No. 00-civ-0717 (DGT), 2004 U.S. Dist. LEXIS 5165 (E.D.N.Y. Mar. 30, 2004) ............. 8, 11

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ........................................................................ 7, 18

*In re Frontier Ins. Group, Inc., Sec. Litig.*,
172 F.R.D. 31 (E.D.N.Y. 1997) ....................................................................... 7, 8

*In re Gilat Satellite Networks, Ltd.*,
No. 02-civ-1510 (CPS), 2007 US. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007) ................. 16

*In re Hi-Crust Partners L.P. Sec. Litig.*, No. 12-civ-8557 (CM),
2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ...................................... 16

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................... 15

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ............................................................. 13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ................ 6

*In re Medical X-Ray Film Antitrust Litig.*,
   No. 93-civ-5904, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998)............................ 14

*In re Sinus Buster Prods. Consumer Litig.*,
   No. 12-civ-2429 (ADS) (AKT), 2014 U.S. Dist. LEXIS 158415
   (E.D.N.Y. Nov. 10, 2014) ................................................................. passim

*In re Symbol Techs., Inc. Sec. Litig.*,
   No. 05-civ-3923 (DRH) (AKT), 2015 U.S. Dist. LEXIS 82756 (E.D.N.Y. June 25, 2015) ...... 9

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 0165, 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) ........................ 19

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ................................................................. 10

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................. 8

*Massiah v. Metroplus Health Plan, Inc.*,
   No. 11-civ-05669 (BMC), 2012 U.S. Dist. LEXIS 109374 (E.D.N.Y. Aug. 3, 2012) ............. 21

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ....................................................................... 18

*Robidoux v. Celani*,
   987 F.2d 932 (2d Cir. 1993) ................................................................ 7

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir.) ..................................................................... 8

*Thomas v. MagnaChip Semiconductor Corp.*,
   No. 14-civ-01160, 2017 U.S. Dist. LEXIS 174353 (N.D. Cal. Oct. 20, 2017)........................ 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ......................................................... 12, 14, 21

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
   No. 10-civ-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276
   (E.D.N.Y. Apr. 17, 2015) ......................................................................................... 7, 10, 13, 21

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ................................................................................................ 6, 21

**Statutes**

15 U.S.C. 78u-4(a)(7) ................................................................................................................. 17

**Other Authorities**

NERA Economic Consulting's *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* (2018) ............................................................................................................. 18

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. passim

Lead Plaintiffs Umang Khetarpal ("Khetarpal"), Benjamin Webb, Gang Chen, Timothy Heath, and Minh Nguyen (collectively, "Lead Plaintiffs") respectfully submit this memorandum in support of their unopposed[1] motion for preliminary approval of class action settlement (the "Motion") and request entry of an order preliminarily approving the proposed settlement and providing for notice (the "Preliminary Approval Order").

## I.  INTRODUCTION

The proposed Settlement provides for a $625,000 cash payment (the "Settlement Amount")[2] to the Class[3] in consideration for resolving all claims alleged in the above-captioned action against all Defendants.  The Settlement is the result of Lead Plaintiffs' and their counsel's vigorous litigation efforts and extensive arm's-length negotiations among the parties.  The Preliminary Approval Order, among other things, will: (1) for the purposes of Settlement only, preliminary certify the Settlement Class, appointing Lead Plaintiffs as the class representatives and Lead Plaintiffs' counsel as Lead Counsel for the Settlement Class; (2) preliminarily approve the proposed Settlement as set forth in the Stipulation dated December 21, 2018; (3) approve the form and manner of notice; and, (4) schedule a final approval hearing (the "Settlement Hearing") at which time the Court will, among other things, make a final determination as to whether the Settlement should be approved as fair, reasonable and adequate.

---

[1] While Defendants do not oppose the Motion, Defendants do not necessarily agree with all of Lead Plaintiffs' descriptions and assessments of the litigation herein.

[2] In addition, to the Settlement Amount of $625,000, Defendants have agreed to pay one-half of the Notice and Administration Expenses, up to $25,000.

[3] The proposed Settlement Class, stipulated to by the Settling Parties, includes all Persons who purchased or otherwise acquired Cemtrex securities during the period from December 26, 2012 through and including March 6, 2017 (the "Class Period"), and were allegedly damaged thereby (the "Settlement Class").  All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement (the "Stipulation"), which is attached as Exhibit 1 to the accompanying Declaration of Shannon L. Hopkins (the "Hopkins Decl.," with exhibits thereto as, "Ex. ___").

Preliminary approval is warranted where, as here, the Settlement is within the range of possible approval of what might be found to be fair, reasonable, and adequate to justify notice to the proposed class. The Settlement is the product of arm's-length negotiations between experienced counsel pursuant to a mediation held before the Hon. Faith S. Hochberg, United States District Judge (ret.) (the "Mediator") and after an assessment of the merits, defenses, and risks and expenses in continuing litigation through trial. Based on the factors discussed herein, Lead Plaintiffs and their counsel believe that the Settlement provides a favorable recovery for the Class and is in best interests of the Class.

## II.    NATURE OF THE ACTION

### A.    Summary Of The Claims And Allegations

This litigation commenced on February 24, 2017, when three securities class action complaints were filed in the United States District Court for the Eastern District of New York, alleging violations of the federal securities laws by Defendants. The operative complaint is the Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint") that was filed on May 7, 2018. The Amended Complaint alleges, among other things, violations of Sections 10(b) and 20(a) the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against Cemtrex, Inc. ("Cemtrex" or the "Company"), Saagar Govil, Arun Govil, and Renato Dela Rama (collectively, "Defendants").

The Amended Complaint principally alleges that between December 26, 2012 and March 6, 2017, inclusive (the "Class Period"), Defendants presided over a scheme to secretly promote Cemtrex's stock price while hiding the fact that Cemtrex insiders were concealing stock transactions from the market and investors, skirting mandatory reporting requirements under Section 16(a) of the Exchange Act, and leveraging the Company's common stock in order to fund

acquisitions it would not otherwise be able to fund. ¶¶ 2, 5-8, 46-67, 88-173, 191-216.[4]  In addition to the alleged concealment of insider stock transactions, Defendants allegedly caused Cemtrex to falsely claim ownership over a purported Indian subsidiary that it did not actually own and falsely tout the Company's financial outlook for its German electronics manufacturing segment when, in actuality, assets acquired just months earlier were failing and the Company would soon be forced to close a key facility that was supposedly central to growing the segment. ¶¶ 4, 12, 73-87, 174-79, 188-90, 217-20, 227-42.  When the news about these alleged misrepresentations was partially revealed on February 20, 2017, Cemtrex shares fell approximately 30%, damaging investors.  ¶¶ 9, 221-26.  The Amended Complaint also alleges that after corroboration of the misrepresentations, the Company's stock price dropped almost 9% to close at $3.35 per share on March 6, 2017, again damaging investors.  ¶¶ 11, 227-50.

### B.    Procedural History

Three securities class action complaints were filed in the United States District Court for the Eastern District of New York on February 24, 2017: *Cullinan v. Cemtrex Inc., et al.*, Case No. 2:17-cv-01067; *Monteil v. Cemtrex Inc., et al.*, Case No. 2:17-cv-01070; and, *Guerrier v. Cemtrex Inc., et al.*, Case No. 2:17-cv-01071.  On March 9, 2018, the Court ordered the cases consolidated, appointed Lead Plaintiffs and approved their choice of counsel, Levi & Korsinsky LLP as Lead Counsel.  On March 12, 2018, the Court ordered the *Monteil* and *Guerrier* actions be closed with all further filings to be filed in the *Cullinan* action.  A scheduling order was entered by the Court on April 18, 2018.

Lead Plaintiffs filed the Amended Complaint on May 7, 2018.  On July 6, 2018, Defendants filed their motion to dismiss the Amended Complaint.  Lead Plaintiffs opposed the motion to

---

[4] All paragraph references are to the Amended Complaint filed on May 7, 2018 (ECF No. 46).

dismiss on August 20, 2018 and also filed a motion to strike certain exhibits in support of the motion to dismiss. Defendants filed reply papers in support of their motion to dismiss and an opposition to Lead Plaintiffs' motion to strike on October 4, 2018. After agreeing to a settlement in principle as described below, on October 8, 2018, the parties requested that the Court adjourn the pending motion deadlines, which the Court granted on October 9, 2018.

## III. THE SETTLEMENT

The Settling Parties reached the Settlement through protracted, arm's-length mediation before the Hon. Faith S. Hochberg, United States District Judge (ret.). On September 11, 2018, the Settling Parties and the plaintiffs in Derivative Actions[5] attended a full-day mediation session with the Mediator. This mediation session was preceded by the submission of mediation statements on the part of the Settling Parties. After the full-day session, the negotiations continued for several weeks with the assistance of the Mediator.

On October 2, 2018, the Mediator presented the Settling Parties and their counsel with a Final Mediator's Recommendation (the "Recommendation"), setting October 4, 2018 at 12:00 p.m. as the deadline for the Settling Parties acceptance or rejection of the Recommendation. The Recommendation proposed a final financial payment to the Class of $625,000. In addition, due to plaintiff Khetarpal's extensive involvement, as more fully described below, the Mediator's Recommendation included a recommendation of an incentive award of $22,000 for plaintiff Khetarpal and $2,500 for each of the remaining lead plaintiffs.

After extending the deadline to 5:00 p.m. on October 4, 2018, the Mediator informed the Settling Parties that each party had accepted the Recommendation. A term sheet memorializing

---

[5] Three actions brought derivatively in the name of Cemtrex were filed against Cemtrex's directors, including the individual Defendants herein, concerning certain of the alleged misconduct giving rise to the claims in the Class Action. The Court consolidated the derivative actions and reassigned the consolidated derivative action to your Honor on December 17, 2018.

the Recommendation and several additional terms was executed by the Settling Parties on October 11, 2018.  Finalization of the Settlement terms followed with the Stipulation being executed on December 21, 2018.

The proposed Settlement consists of $625,000 in cash to be paid by Defendants or Defendants' insurers on behalf of the Defendants, and payment by Defendants of one-half of the Notice and Administration Expenses, up to $25,000.  The Settlement Amount will be deposited into an interest-bearing escrow account within fifteen business days following the Court's entrance of the Preliminary Approval Order (with any interest earned thereon, the "Gross Settlement Fund").  The Gross Settlement Fund shall be used to pay any Taxes or Tax Expenses, Notice and Administration Expenses, Attorneys' Fees and Expenses approved by the Court, any Awards to Lead Plaintiffs approved by the Court, and any other fees and expenses authorized by the Court. The balance of the Gross Settlement Fund after these payments (the "Net Settlement Fund") will be distributed to Authorized Claimants on a *pro rata* basis as set forth in the Notice and proposed Plan of Allocation.  In return, the Settlement provides that Lead Plaintiffs and the Settlement Class will release all Settled Claims against the Released Parties.

Lead Counsel intends to move for an award of attorneys' fees in an amount not to exceed twenty-five percent (25%) of the Settlement Amount.  Lead Counsel also intends to seek reimbursement of costs not to exceed $80,000.  Lastly, in accordance with the Mediator's Recommendation, Lead Counsel shall seek a compensatory award not to exceed $22,000 for plaintiff Khetarpal and $2,500 for each of the remaining lead plaintiffs, Benjamin Webb, Gang Chen, Timothy Heath, and Minh Nyguyen.

## IV.     ARGUMENT

### A.     The Settlement Class Should Be Certified

As part of the preliminary approval of the Settlement, Lead Plaintiffs seek preliminary certification of the Settlement Class for the purposes of settlement. *Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 365-66 (E.D.N.Y. 2014) ("Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied.") (quoting *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012)); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *27 (S.D.N.Y. Dec. 23, 2009) ("The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class-action settlement.") (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)).  The proposed Settlement Class, stipulated to by the Settling Parties, includes all Persons who purchased or otherwise acquired Cemtrex securities during the period from December 26, 2012 through and including March 6, 2017 (the "Class Period"), and were allegedly damaged thereby.  Hopkins Decl., Ex. 1 ¶ 2.  The Settlement Class specifically excludes Defendants, all current and former officers, directors and control persons of the Company, and such excluded persons' immediate families, legal representatives, heirs, predecessors, successors, and assigns, and any entity in which any excluded person has or had a controlling interest.  *Id.*  Also excluded from the Settlement Class are those Persons who file valid and timely requests for exclusion in accordance with the Court's Preliminary Approval Order, and those Persons who have a net profit in purchases and sales of Cemtrex securities or otherwise suffered no compensable damages under the securities laws during the Class Period.  *Id.*

Certification of a settlement class is proper if the class meets the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation, and at least one subsection of Rule 23(b). *In re Am. Int'l Group*, 689 F.3d at 238. "The Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation . . . . Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *Barone v. Safway Steel Prods., Inc.*, No. 03-civ-4258 (FB), 2005 U.S. Dist. LEXIS 17645, at *4 (E.D.N.Y. Aug. 23, 2005); *In re Frontier Ins. Group, Inc., Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) ("Because of the importance of the class action device in securities fraud suits, these conditions are 'construed liberally.'") (citation omitted). The proposed Settlement Class meets these requirements and should therefore be certified for settlement purposes.

### 1. Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable means "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Southeast & Southeast Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). Although the "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers," *Robidoux v. Celani*, 987 F.2d 932, 936 (2d Cir. 1993), "numerosity is presumed at a level of 40 members . . . ." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-civ-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276, at *4-5 (E.D.N.Y. Apr. 17, 2015) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). "In securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by

a showing that a large number of shares were outstanding and traded during the relevant period." *In re Frontier*, 172 F.R.D. at 40 (citation omitted).

According to Cemtrex's Form 10-Q for the quarter-ended December 31, 2016, filed with the Securities and Exchange Commission ("SEC") on February 14, 2017, as of February 6, 2017, there were 10.06 million common shares of Cemtrex outstanding. While the exact number of Settlement Class members cannot be precisely determined at this time, given the volume of shares outstanding, it is likely in the hundreds or thousands, thereby satisfying the numerosity requirement.

### 2.    Commonality

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *In re Ashanti Goldfields Sec. Litig.*, No. 00-civ-0717 (DGT), 2004 U.S. Dist. LEXIS 5165, at *37 (E.D.N.Y. Mar. 30, 2004) (quoting *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001)). In securities actions, "the commonality requirement . . . has been applied permissively." *Id.* (citation omitted).

Here, there are common questions of law and fact relating to: (1) whether Defendants violated federal securities laws; (2) whether Defendants' statements were materially false and/or misleading at the time they were made; (3) whether the price of Cemtrex's securities was artificially inflated during the Class Period; and, (4) whether damages were sustained, and if so, the proper measure of damages. Thus, commonality has been met.

### 3.    Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "is not highly demanding." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 532 (E.D.N.Y. 2017) (citation omitted). Typicality is satisfied "when each class member's claim arises from the same course of

events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States*, 504 F.3d at 245.

Defendants' alleged misconduct similarly affected Lead Plaintiffs and all other Settlement Class members. Lead Plaintiffs, and each Settlement Class member, relied upon the same alleged misstatements in Cemtrex's SEC filings, press releases and earnings conference calls and all claims arise from the alleged fraudulent misconduct as described above at Section II.A. For these reasons, the typicality requirement has been satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A representative party is adequate if: (1) there are no conflicts of interest between the plaintiffs and members of the class; and (2) plaintiffs' attorneys are experienced and qualified. *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000); *Coco v. Inc. Vill. Of Belle Terre*, 233 F.R.D. 109, 115 (E.D.N.Y. 2005).

As for the first prong, the interests of the Lead Plaintiffs are not in conflict with those of the Settlement Class. As discussed above, Lead Plaintiffs and the Settlement Class members all purchased shares of Cemtrex securities based on the same materially false and misleading statements or omissions made by Defendants and were damaged as a result. *See In re Symbol Techs., Inc. Sec. Litig.*, No. 05-civ-3923 (DRH) (AKT), 2015 U.S. Dist. LEXIS 82756, at *19 (E.D.N.Y. June 25, 2015) ("where, as here, the alleged frauds 'are brought under the same causes of action' and 'where [the] frauds resulted from misinformation disseminated in financial statements, the Court does not find a class conflict.'") (citation omitted).

The second prong is also met here. Lead Counsel is experienced and capable of prosecuting this action on behalf of the Settlement Class. Lead Counsel has served as lead or co-lead counsel

in numerous securities class actions, obtaining substantial settlements and recoveries on behalf of securities classes.  *See* Hopkins Decl., Ex. 2.

> **5.**      **Common Questions Predominate And A Class Action Is The Superior Method Of Adjudication**

In certifying a class, the court must also consider whether the proposed class meets one of the requirements of Rule 23(b).  *Smithtown Bancorp*, 2015 U.S. Dist. LEXIS 73276 at *8. The Settlement Class here satisfies the requirements of Rule 23(b)(3) in that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.  23(b)(3).

"Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Inv. Vill. Of Belle Terre*, 233 F.R.D. at 115 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). As noted by the Supreme Court, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Here, as discussed above, there are common questions of fact and law, such as whether Defendants made materially false and misleading statements that artificially inflated Cemtrex's stock price, that predominate. *Smithtown Bancorp*, 2015 U.S. Dist. LEXIS 73276 at *9-10 ("[t]he same legal and factual questions" exist for each class member based on allegations of false and misleading statements that artificially inflate stock prices).

For the superiority analysis, Rule 23(b)(3) considers the following factors relevant: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; and (D) the likely difficulties in managing a class action."[6] Fed. R. Civ. P. 23(b)(3)(A)-(D). Given the complex nature of securities class actions, the large numbers of geographically dispersed class members, and the high costs associated with individualized actions, it is doubtful relief would be pursued or obtained by the Settlement Class members on an individual basis. *Ashanti Goldfields*, 2004 U.S. Dist. LEXIS 5165 at *53-54 ("In general, securities suits such as this easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be 'fair' nor an adjudication of their claims.") (citation omitted). Further, those Settlement Class Members who desire to pursue individualized actions have the option to opt-out of the Settlement.

Accordingly, the proposed Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3) and it is respectfully requested that the Court certify the Settlement Class for settlement purposes only, appointing Lead Plaintiffs as the Class Representatives.

### 6. The Court Should Appoint Levi & Korsinsky As Class Counsel

Lead Counsel satisfies Rule 23(g)'s adequacy requirements. In assessing proposed class counsel's adequacy, a court must consider the following: "(1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and the claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to

---

[6] Because this is a settlement in lieu of a trial, the Rule 23(b)(3)(D) inquiry is not required. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule. Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

representing the class." *Cazares v. Ava Rest. Corp.*, No. 15-civ-0477 (KAM) (RML), 2017 U.S. Dist. LEXIS 50834, at *25-26 (E.D.N.Y. Mar. 31, 2017). In addition to Lead Counsel's experience and knowledge, Lead Counsel has also performed substantial work investigating the claims in this action, filing the Amended Complaint, opposing Defendants' motion to dismiss, preparing the mediation statement, and participating in the mediation process. Accordingly, Lead Plaintiffs respectfully request appointment of Lead Counsel as Class Counsel for purposes of the Settlement.

### B.     The Proposed Settlement Warrants Preliminary Approval

Rule 23(e) requires presentation of a class action settlement to the court for a preliminary determination as to whether it is sufficiently "fair, reasonable and adequate" to justify notice to those affected by the settlement. Fed. R. Civ. P. 23(e).[7] "There is a 'strong judicial policy in favor of settlements, particularly in the class context' and 'compromise' is 'encouraged by the courts and favored by public policy.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-117 (2d Cir. 2005); *see also In re Sinus Buster Prods. Consumer Litig.*, No. 12-civ-2429 (ADS) (AKT), 2014 U.S. Dist. LEXIS 158415, at *17 (E.D.N.Y. Nov. 10, 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.") (citation omitted).

Notice to a proposed class should be directed by the Court "if giving notice is justified by the parties' showing that the court will likely be able to" approve the settlement under Rule 23(e)(2) and certify the class for the purposes of settlement. Fed. R. Civ. P. 23(e)(1); *see also In re Traffic Exec. Ass'n E. R.R.s.,* 627 F.2d 631, 634 (2d Cir. 1980) (if the court determines that there is "probable cause to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness," preliminary approval should be granted,)

---

[7] The argument herein includes application of the new amendments to Rule 23, effective December 1, 2018.

Under Rule 23(e)(2), approval of a settlement is appropriate if it is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other."

### 1. Lead Plaintiffs And Counsel Adequately Represented The Class

Prior to reaching the proposed Settlement, Lead Plaintiffs and counsel conducted an extensive review of all relevant public filings and other publicly-available information; interviewed certain third-party witnesses; prepared the Amended Complaint; briefed Defendants' motion to dismiss; consulted with experts; and reviewed an internal Company document provided by Cemtrex during the course of the mediation discussions. *Smithtown Bancorp*, 2015 U.S. Dist. LEXIS 73276 at *18 (finding that despite the fact that discovery had not started, counsel was "knowledgeable about the facts and the law involved in the case") (citing *In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 117 (S.D.N.Y. 2009) ("granting preliminary approval of settlement where 'a vast amount of additional factual and expert discovery remains' because 'parties ha[d] a thorough understanding of their case prior to settlement'")). Thus, Lead Plaintiffs and counsel were sufficiently informed of the case's strengths and weaknesses, enabling them to appropriately evaluate the proposed Settlement's fairness, reasonableness, and adequacy. Furthermore, Lead Counsel is a nationally-recognized law firm experienced in securities litigation and class actions. *See* Hopkins Decl., Exs. 2-3.

After consulting with experts, Lead Plaintiffs estimate that if they prevailed on all of their claims, the maximum recovery would be $4 million, with a more likely recovery of $2 million. Hopkins Decl. ¶ 3. The Settlement Amount of $625,000 constitutes approximately 31% of likely recoverable damages if Lead Plaintiffs prevail on all claims. Thus, the Settlement Amount falls

within the range of possible approval. *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."); *Medical X-Ray*, 1998 U.S. Dist. LEXIS 14888 at *15-16 (citing to cases with recoveries of less than 2% and 6.4-11%).

Additionally, as noted by courts in this Circuit, settlement amounts are "not susceptible of a mathematical equation yielding a particularized sum." *In re Medical X-Ray Film Antitrust Litig.*, No. 93-civ-5904, 1998 U.S. Dist. LEXIS 14888, at *15 (E.D.N.Y. Aug. 7, 1998) (citation omitted). "In addition, the adequacy of the amount offered must be judged 'not in comparison with the best possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of the plaintiff[s'] case.'" *Id.* (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 462 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)). The range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

## 2. The Proposed Settlement Was The Result Of Fair, Non-Collusive, Informed Arm's-Length Negotiations

In determining procedural fairness, courts look at "the negotiating process leading to settlement." *Wal-Mart*, 396 F.3d at 116. "Where a settlement is the 'product of arm's length negotiations conducted by experienced, capable counsel,' it enjoys a 'presumption of correctness.'" *Sinus Buster*, 2014 U.S. Dist. LEXIS 158415 at *17-18 (quoting *Wal-Mart*, 396 F.3d at 116).

Here, the proposed Settlement is the product of extensive non-collusive arm's-length negotiations between parties knowledgeable about the case facts and allegations. Negotiations

took place over the course of several months before an experienced mediator, the Hon. Faith S. Hochberg (ret.) who has agreed to submit an affidavit in support of final approval of the proposed Settlement. *See D'Amato*, 236 F.3d at 85 ("mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."). In addition to a full day of in-person negotiations before the Mediator, the parties submitted mediation statements, participated in several weeks of additional negotiations with the assistance of the Mediator, culminating in the Mediator's Recommendation, and the finalization of the Settlement terms over the course of several more weeks. Hopkins Decl., Ex. 1 ¶¶ 12-18.

### 3. The Relief Provided For The Class Is Adequate

Rule 23(e) lists four factors for courts to consider in determining whether the relief provided for the class is adequate: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." The proposed Settlement here satisfies each of these factors and is therefore adequate.

### (a) The Costs, Risks, And Delay of Trial And Appeal

The immediate benefits of the proposed Settlement outweigh the substantial risks, delay, and expense of continued litigation. *Gay v. Tri-Wire Eng'g Solutions, Inc.*, No. 12-civ-2231 (KAM)(JO), 2014 U.S. Dist. LEXIS 232, at *21-22 (E.D.N.Y. Jan. 2, 2014); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain.") (citation omitted). If litigation proceeded, Lead Plaintiffs would first have to prevail on the outstanding motion to dismiss for which there is no guarantee of success. Lead Plaintiffs also faced other significant risks in establishing liability on motions for

summary judgment and/or at a trial on the merits and of proving damages and loss causation. Moreover, even before a trial, Lead Plaintiffs would face the expense, delay and risk of expert discovery and dispositive motions. *Sinus Buster*, 2014 U.S. Dist. LEXIS 158415 at *23-25 (discussing difficulty of predicting liability and damages outcomes, the "long road to an ultimate determination" and possibility of class decertification as another hurdle if settlement rejected).

While Lead Plaintiffs believe the claims asserted in this action are meritorious, there is no certainty Lead Plaintiffs would prevail at trial. If this action were litigated to conclusion, including trial and appeals, it would likely be years before final resolution, with the addition of extensive costs and Defendants' insurance would most certainly be depleted. *Aramburu v. Healthcare Fin. Servs.*, No. 02-civ-6535 (MDG), 2009 U.S. Dist. LEXIS 33642, at *13 (E.D.N.Y. Apr. 22, 2009) ("This settlement is well within the range of reasonableness, particularly in light of the value of obtaining compensation quickly."); *In re Hi-Crust Partners L.P. Sec. Litig.*, No. 12-civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175, at *14 (S.D.N.Y. Dec. 19, 2014) (courts recognize "likely duration of litigation" as one of the "critical factors in evaluating the reasonableness of a settlement"); *see also In re Gilat Satellite Networks, Ltd.*, No. 02-civ-1510 (CPS), 2007 US. Dist. LEXIS 29062, at *36 (E.D.N.Y. Apr. 19, 2007) ("[s]ecurities class actions are generally complex and expensive to prosecute."). Given the complexities and uncertainties inherent in continued litigation, the proposed Settlement is in the best interests of the Settlement Class.

        (b)      The Effectiveness Of The Proposed Method Of Distributing Relief To The Class

Lead Plaintiffs and counsel request that RG/2 Claims Administration LLC ("RG/2") be approved as Claims Administrator for the Settlement. RG/2 has been administrating claims for 20 years, serving as administrator in about 50 securities fraud class actions and disbursing over $1.2

billion to shareholder claimants. Its administrative team is comprised of class action attorneys, certified public accountants and forensic accountants.

RG/2 will distribute the funds in this Action in accordance with the established securities class action distribution process. The Notice and Proof of Claim will be provided via first class mail, postage prepaid, to all Settlement Class Members who can be identified with reasonable effort, including legal owners listed on Company, securities firms and transfer agents transfer records, as well as nominee owners such as brokerage firms. Additionally, RG/2 will provide Notice in the form of the Summary Notice to the general public via electronic publication on *GlobeNewswire* and in print in *Investor's Business Daily*. As further detailed in Section IV.C, the forms and methods of Notice meet the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995.

The Notice will inform each Class Member to complete and submit the Proof of Claim to RG/2 within a specified amount of time. Once all claims are received and confirmed to be complete, non-fraudulent, and a part of the Class, RG/2 will calculate the *pro rata* distribution for each Class Member from the Net Settlement Fund and distribute funds via check after approval from the Court and in accordance with the Plan of Distribution. If any balance remains in the Net Settlement Fund six months after the initial distribution, RG/2 shall first pay any late, but otherwise valid, claim, pay any additional Notice and Administration Expenses incurred, and lastly make a second distribution to Authorized Claimants if economically feasible.

In summary, RG/2 will follow standard practices in providing Notice to potential Class Members and in distributing Settlement funds, using all reasonable and diligent efforts to ensure payment to all Class Members.

(c)     The Terms Of The Proposed Award Of Attorney's Fees, Including
        Timing Of Payment

As set forth in the Stipulation and Notice, Class Counsel intends to seek an award of attorney's fees equal to 25% of the Settlement Amount.  The U.S. Supreme Court and the Second Circuit both recognize that counsel should be compensated for efforts expended in creating a common fund for the benefit of a class.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Cent. States*, 504 F.3d at 249.  In determining the appropriate amount of an attorney's fees award, courts look "to the marketplace as our guide to what is 'reasonable.'"  *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).

The requested fee percentage sought here is less than or is similar to other awards granted in comparable securities class actions.  *See, e.g., In re Blech Sec. Litig.*, No. 94-civ-7696 (RWS), 2000 U.S. Dist. LEXIS 6920, at *16 (S.D.N.Y. May 19, 2000) (awarding attorney's fees of 30% of $800,000 settlement, and $45,302.88 in costs); *Adair v. Bristol Tech. Sys.*, No. 97-civ-5874 (RWS), 1999 U.S. Dist. LEXIS 17627, at *9-10 (S.D.N.Y. Nov. 12, 1999) (awarding attorney's fees of 33% of $975,000 settlement, as well as $13,008.12 in costs); *Gudimetla v. Ambow Educ. Holding*, No. 12-civ-5062 (PSG) (AJWx), 2015 U.S. Dist. LEXIS 187106, at *20-28 (C.D. Cal. Mar. 16, 2015) (granting attorney's fees of 25% of $1.5 million settlement and $100,868.94 in costs).[8]

Thus, Class Counsel respectfully submits that the award of attorney's fees proposed here is well within the range of percentage fees awarded within the Second Circuit, supporting preliminary approval of the settlement.  Further details and evidence will be submitted in support of Class Counsel's request when formally submitted for consideration by the Court.

---

[8]*See also,* NERA Economic Consulting's *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* (2018) at p. 42 noting median attorney's fees of 30% for settlements under $5 million from 2012 through 2017. https://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf,

<u>Any Agreement Required To Be Identified Under Rule 23(e)(3)</u>

In accordance with Rule 23(e)(3), the Stipulation notes that the parties have entered into a Supplement Agreement. As described therein, the Supplemental Agreement provides Defendants with the option to terminate the Settlement if a certain percentage of damaged Cemtrex securities request exclusion from the Settlement Class. As is customary in settlements, the Supplemental Agreement is confidential. *See Hefler v. Wells Fargo & Co.*, No. 16-civ-05479 (JST), 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal.) (Sept. 4, 2018) (approving confidentiality of opt-out termination agreement to "'avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement.'"); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-civ-01160, 2017 U.S. Dist. LEXIS 174353, at *16 (N.D. Cal. Oct. 20, 2017) (same).

### 4. The Settlement Treats Class Members Equitably

There are no "obvious deficiencies warranting denial of preliminary approval status" such as "improper[] . . . preferential treatment" of class representatives or of segments of the class. *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 356 (E.D.N.Y. 2006) (citation omitted). Here, Lead Plaintiffs and all Settlement Class Members will receive *pro rata* recoveries based on the same recognized loss calculation formula. *See* Hopkins Decl., Ex. 1, A-1; *see also* Section IV.B.3, *supra*; *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (citation omitted). Further, the Plan of Allocation in this Action is substantially similar to the plans of allocation in comparable securities class action settlements. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165, 2007 U.S. Dist. LEXIS 85629, at *40 (S.D.N.Y. Nov. 7, 2007) (finding plan of allocation fair and equitable where "Each valid claim will then be calculated so that each authorized claimant will receive, on a

proportionate basis, the share of the net settlement fund that the claimant's recognized loss bears to the total recognized loss of all authorized claimants.").

As included in the Mediator's Recommendation, Lead Plaintiffs intend to request reimbursement of not more than $22,000 for plaintiff Khetarpal and $2,500 each for the remaining lead plaintiffs, to be approved by the Court. Courts have consistently approved such incentive awards in this Circuit. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010) (incentive awards of $25,000 and $5,000) (collecting cases); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438-39 (S.D.N.Y. 2016) (average range of standard incentive award is $2,500 to $85,000). The amount for plaintiff Khetarpal includes reimbursement for his active role in this litigation which includes, among other things, reviewing all lead plaintiff moving papers; assisting counsel with researching and drafting the amended complaint: investigating facts relating to Cemtrex's Indian subsidiary; reviewing Defendants' motion to dismiss; assisting with strategy on Plaintiffs' opposition to the Defendants' motion to dismiss; and participating in the Mediation and subsequent discussions to reach a resolution of this Action.

Because the proposed Settlement is the result of adequate class representation, negotiated at arm's length, providing adequate relief for the Class on an equitable basis, preliminary approval is warranted.

### C. The Proposed Form Of Notice And Notice Schedule Should Be Approved

#### 1. The Proposed Form Of Notice

Notice of a proposed settlement must meet the requirements of Rules 23(c)(2) and 23(e), as well as requirements under the Exchange Act and the Due Process Clause of the United States Constitution. *Sinus Buster*, 2014 U.S. Dist. LEXIS 158415 at *29; 15 U.S.C. § 78u-4(a)(7). Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)), and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P.

23(e)(1)).  "Where, as here, the parties seek to simultaneously certify a settlement class and to settle a class action, the elements of Rule 23(c) and Rule 23(e) are combined."  *Sinus Buster*, 2014 U.S. Dist. LEXIS 158415 at *29-30.  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70).

Here, the proposed Notice, attached as Exhibit A-1 to the Stipulation, satisfies these standards.  The Preliminary Approval Order directs that within twenty-eight (28) calendar days after entry of the Preliminary Approval Order, Class Counsel shall cause the Notice to be mailed to all Settlement Class Members who can be identified with reasonable effort.  Hopkins Decl. Ex 1, A ¶ 11.  The proposed Notice includes the information required by Rule 23(c)(3) and the Exchange Act as it includes: (1) the reasons for and terms of the Settlement; (2) informs Settlement Class Members that they may appear through counsel; (3) the time and manner for requesting an exclusion; (4) a statement of recovery; (5) the date, time and place of the Settlement Hearing; and, (6) information about the proposed attorneys' fees and costs.  *See Smithtown Bancorp*, 2015 U.S. Dist. LEXIS 72376 at *24-25; *Massiah v. Metroplus Health Plan, Inc.*, No. 11-civ-05669 (BMC), 2012 U.S. Dist. LEXIS 109374, at *8 (E.D.N.Y. Aug. 3, 2012).  In addition to mailing the Notice to Settlement Class Members, a Summary Notice will be published electronically once on *GlobeNewswire* and in print once in the *Investor's Business Daily* within ten (10) business days after entry of the Preliminary Approval Order.  Hopkins Decl., Ex. 1, A ¶ 15.

Accordingly, the form, content, and methods of dissemination of the Notice meet all of the requirements of due process, the Exchange Act, and the Federal Rules of Civil Procedure.

## 2.     The Proposed Schedule

Lead Plaintiffs respectfully request that the Court approve the following proposed schedule for finalizing the Settlement:

| EVENT | PROPOSED DATE |
|---|---|
| Deadline for publishing the Summary Notice | Not later than 10 calendar days after entry of the Preliminary Approval Order |
| Deadline for mailing the Notice and Proof of Claim | Not later than 28 calendar days after entry of the Preliminary Approval Order |
| Deadline for receipt of exclusion requests | 30 calendar days prior to the Settlement Hearing |
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and the application for Attorneys' Fees or Expenses or payment to Lead Plaintiffs | 21 calendar days prior to the Settlement Hearing |
| Deadline for receipt of comments or objections | 14 calendar days prior to the Settlement Hearing |
| Deadline for filing of responses to any objections, or in further support of the Settlement, the Plan of Allocation, and the application for Attorneys' Fees or Expenses or payment to Lead Plaintiffs | 7 calendar days prior to the Settlement Hearing |
| Deadline for filing of proof of mailing of Notice and Proof of Claim and proof of publication of Summary Notice | At, or any time prior to, the Settlement Hearing |
| Settlement Hearing | At the Court's convenience |
| Deadline for submitting Proof of Claim | Not later than 75 calendar days after the entry of the Preliminary Approval Order |

## V.     CONCLUSION

Based on the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (1) certify the Settlement Class for the purposes of settlement only, appointing Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; (2) preliminary approve the proposed Settlement; (3) approve the proposed form and manner of Notice and schedule for finalizing Settlement; and (4) schedule a final Settlement Hearing.

DATED:  December 21, 2018

Respectfully Submitted,

**LEVI & KORSINSKY LLP**

*/s/Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
Sebastiano Tornatore (ST-0807)
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
        stornatore@zlk.com


*Counsel for the Cemtrex Investor Group and Lead Counsel for the [Proposed] Class*

**BRAGER EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel (LE-4505)
Melissa A. Fortunato (MF-7182)
885 Third Avenue, Suite 3040
New York, New York 10022
Tel.: (212) 355-4648
Fax: (212) 214-0506
Email: eagel@bespc.com
        fortunato@bespc.com


*Additional Counsel for the Cemtrex Investor Group*


## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2018, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/Shannon L. Hopkins*
Shannon L. Hopkins

23